STATE of Delaware,

v.

Colleen WILHERE.

C.A. No. N94–02–0734M.

Superior Court of Delaware,
New Castle County.

Submitted: June 1, 1994.
Decided: June 15, 1994.

Ann Marie Johnson, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the State.

John M. Willard, Wilmington, for defendant, Colleen Wilhere.

## OPINION

COOCH, Judge.

Colleen Wilhere (Defendant) has moved to Dismiss the State's Petition to Declare Respondent an Habitual Offender Under 21 *Del.C.* ch. 28. The State maintains that Defendant meets the habitual offender criteria of 21 *Del.C.* § 2802(1) on the basis of her having been convicted of three qualifying

offenses within five years, even though the date of the second "conviction" did not precede the date of the third "offense." Defendant argues that, because the date of her second "conviction" did not precede the date of her third "offense," she is ineligible for "habitual offender" status. Defendant also asserts that, at the time she pled guilty to the qualifying offenses, she was not advised that she would be eligible for habitual offender status upon her third qualifying conviction, thus prohibiting her from now being declared an habitual offender.

For the reasons set forth herein, the Court finds that Title 21, Chapter 28 of the Delaware Code does not require Defendant's second conviction to have preceded the commission of her third offense, so long as her convictions arose from three "separate and distinct" qualifying offenses within the meaning of the statute, and did not otherwise occur within a 24–hour period. Accordingly, Defendant's Motion to Dismiss the State's Petition is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 1994, the State filed a petition to declare Defendant an habitual offender under 21 Del.C. ch. 28 ("Habitual Offenders"). Defendant had been charged with Driving While License Suspended (21 Del.C. § 2756) on February 16, 1990, and was convicted of that charge on or about that date.[1] She was subsequently charged with Driving under the Influence of Alcohol/Drugs (21 Del.C. § 4177) on February 2, 1993 and with Reckless Driving (21 Del.C. § 4175) on May 20, 1993. Wilhere was convicted of the last two offenses on October 13, 1993 when she pled guilty to those charges (among others) in this Court.

The State brought its action to declare Defendant an habitual offender pursuant to 21 Del.C. § 2802, which defines an "habitual offender" in pertinent part as follows:

### § 2802. Definitions

An "habitual offender" shall be any person, resident or nonresident, whose driving record, as maintained in the office of the Department of Public Safety, shows that such person has accumulated convictions for separate and distinct offenses described in subdivision (1) of this section during a 5 year period ... provided, that where more than 1 included offense shall be committed within a 24–hour period, such multiple offenses shall be treated for the purposes of this chapter as 1 offense:

(1) *Three or more convictions.*— Three or more convictions, singularly or in combination of any of the following separate and distinct offenses arising out of separate acts:

\*  \*  \*  \*  \*  \*

c. Driving or having actual physical control of a motor vehicle while under the influence of intoxicating liquor or of any drug, in violation of § 4177 of this title;

\*  \*  \*  \*  \*  \*

e. Driving a motor vehicle during a period of suspension or revocation, in violation of § 2756 of this title;

f. Driving a motor vehicle in wilful or wanton disregard for the safety of persons or property, in violation of § 4175 of this title....

21 Del.C. § 2802(1). Once a person has been determined to be an habitual offender, his or her driving privileges are revoked for a period of five years. 21 Del.C. § 2809(1).

Defendant does not dispute the fact that the three offenses enumerated by the State otherwise fall within the purview of § 2801(1). Defendant contends, however, that a "conviction" for an offense under the statute must occur prior to the commission of the next qualifying offense. She thus maintains that her third qualifying offense (Reckless Driving, committed on May 20, 1993) cannot trigger the application of § 2802 because she had not yet been convicted of her second qualifying offense (Driving under the Influence, committed on February 2, 1993) as of the time the third offense took place. Defendant further argues that she should not be subject to habitual offender penalties be-

---

1. The exact date of Defendant's first conviction is unclear from the record but is otherwise not in dispute as having preceded the commission of the second offense.

cause she was not advised of the possibility of such consequences in her earlier proceedings.

## II. DISCUSSION

### A. 21 Del.C. ch. 28 requires only that qualifying motor vehicle offenses be "separate and distinct" and that such offenses occurred within the designated time period.

The question of when a "conviction" must occur in relation to subsequent offenses under the Habitual Offender statute is an issue of apparent first impression in Delaware. As this determination turns upon an interpretation of § 2802, the Court first turns to the policy behind the statute as a whole for general guidance.

■ Twenty-one *Del.C.* § 2801 provides:

### § 2801. Declaration of Policy

It is hereby declared to be the policy of this State to:

(1) Provide maximum safety for all persons who travel or otherwise use the public highways of this State; and

(2) Deny the privilege of operating motor vehicles on our highways to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of this State, the orders of its courts and the statutorily required acts of its administrative agencies; and

(3) Discourage repetition of criminal acts by individuals against the peace and dignity of this State and her political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of the motor vehicle laws.

Thus "[t]he primary purpose of 21 *Del.C.*, Chapter 28 is to foster public safety on the highways of this State, and not to punish persons who violate traffic regulations." *State v. Kamalski,* Del.Super., 429 A.2d 1315,

1318 (1981). Proceedings and penalties under the habitual offender statute are deemed civil in nature. *Villa v. State,* Del.Supr., 456 A.2d 1229, 1232 (1983); *State v. James J. Fox, Jr.,* Del.Super., Cr.A. No. 85–11–0082M, Gebelein, J. (August 30, 1988) (Mem.Op.); *Harrington v. State,* Del.Supr. No. 96, 1991, 1991 WL 247795, Holland, J. (November 19, 1991) (ORDER).

■ A civil statute, such as § 2802, in which the statutory language is clear and consistent with legislative intent is properly interpreted on its plain meaning. *Seth v. State,* Del.Supr., 592 A.2d 436, 440 (1991). If more than one interpretation is possible, it is "universally held" that habitual offender statutes providing for civil penalties should be liberally construed so as to effectuate their policy of public safety and deterrence. James L. Isham, Annotation, *Automobiles: Validity and Construction of Legislation Authorizing Revocation or Suspension of Operator's License for "Habitual," "Persistent," or "Frequent" Violations of Traffic Regulations,* 48 A.L.R.4th 367 § 51 (1986); *See generally* 7A *Am.Jur.*2d *Automobiles* § 117 (1980).

■ Defendant urges the Court to apply the "successive conviction" requirement of Delaware's Habitual Criminal Statute, 11 *Del.C.* § 4214, to the case at bar. Courts that have considered the issue of timing of convictions and offenses have done so mostly in the context of habitual criminal statutes. There is a split of authority as to whether convictions for earlier criminal offenses must precede the commission of subsequent offenses, with courts most often basing their decisions on the statutory language itself and the policy or purpose behind the statute. *See* Cynthia L. Sletto, Annotation, *Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty under Habitual Offender Statutes,* 7 A.L.R.5th 263 (1992). Indeed, Delaware's habitual *criminal* statute, 11 *Del.C.* § 4214, has been interpreted by the Delaware Supreme Court to require separate, successive convictions, but such interpretation was a

narrow construction of a criminal statute which potentially involves the "extreme penalty of life imprisonment." *Buckingham v. State,* Del.Supr., 482 A.2d 327, 330–31 (1984).

In *Buckingham,* the court said: ·

"... the legislature [in *Hall v. State,* Del. Supr., 473 A.2d 352 (1984) ] intended to reserve the [criminal] habitual offender penalties for those individuals who were not rehabilitated after the specified number of encounters with the criminal justice system and a corresponding number of chances to reform.... [t]hree separate convictions are required, each successive to the other, with some chance for rehabilitation after each sentencing, before the extreme penalty of life imprisonment may be brought to bear."

482 A.2d at 330–31. Importantly, however, there is no provision in Title 11 *Del.C.* ch. 42 comparable to 21 *Del.C.* § 2801 "Declaration of Policy" strongly expressing the public policy of this State that persons who "repeatedly" violate the motor vehicle laws shall be removed from the highways of this State. Although the five-year civil revocation period is severe, it does not compare to the possibility of a life sentence. *See Buckingham,* 482 A.2d at 330–31. Defendant in this case has committed three "separate and distinct offenses" under 21 *Del.C.* § 2802(1), and the rehabilitative goals of 11 *Del.C.* § 4214 do not by analogy apply. The goal of 21 *Del.C.* ch. 28 has been quite clearly articulated by the legislature as being public safety and not the "rehabilitation" of the driver. The Court thus declines Defendant's invitation to extend such a narrow construction to the civil penalties imposed by 21 *Del.C.* § 2802.

Other courts have come to similar conclusions. The Iowa Supreme Court, while interpreting what the Iowa legislature intended by "separate and distinct offenses" in that state's habitual offender statute (containing language identical to 21 *Del.C.* § 2802(1)), emphasized the "significant difference in the philosophy behind habitual criminal statutes generally and those dealing with driving violations." *State v. Thomas,* Iowa Supr., 275 N.W.2d 422, 423 (1979) (holding that multiple offenses arising out of the same acts constituted "separate and distinct" offenses). Although, unlike 21 *Del.C.* § 2802, the Iowa statute did not contain a 24–hour exception for multiple offenses, the court held that the statute "focuses on the *number of convictions* [within the prescribed time period] rather than on the persistency of the conduct." *Id.* (emphasis added). The *Thomas* court found that "the legislature intended three convictions within six years to be grounds for suspension without the added condition that each must occur at a different time." *Id.*

Defendant also attempts to analogize 21 *Del.C.* § 2802(1) to the Driving Under the Influence "subsequent offender" provision, 21 *Del.C.* § 4177(d)(2), since it has been held that, under a statute which *enhances punishment* for a subsequent offense, conviction on the first offense must occur prior to the commission of the second offense.[2] *Kane v. State,* Del.Supr., 327 A.2d 744 (1974). Chief Magistrate (now Superior Court Judge) Barron has opined that a conviction of a prior Driving Under the Influence offense must have occurred prior to commission of a second Driving Under the Influence offense for the "subsequent offender" sentencing of 21 *Del.C.* § 4177(d)(2) to apply. Legal Memorandum 83–112 (revised), Justice of the Peace Courts, Barron, C.M. (Oct. 15, 1983) at 1–3.

However, Defendant's reasoning is flawed in attempting to draw such comparison with 21 *Del.C.* § 2802 because § 4177(d)(2) involves penalty enhancement in a *criminal*

**2.** 21 *Del.C.* § 4177 provides, in pertinent part:

(a) No person shall drive, operate or have in actual physical control a vehicle ... while un-

der the influence of alcohol or of any drug or any combination of drugs and/or alcohol.

\*　\*　\*　\*　\*

(d) Whoever is convicted of a violation of subsection (a) of this section shall:

\*　\*　\*　\*　\*　\*

(2) For each subsequent like offense occurring within 5 years from the former offense,

proceeding.[3] Section 4177(d)(2) deals not with an independent civil license revocation provision such as at issue here but with an enhanced sentencing scheme involving a mandatory period of incarceration. In contradistinction, 21 *Del.C.* ch. 28 has consistently been interpreted as civil in nature. Thus, the narrow interpretation Defendant calls for similarly has no application here.

Several courts have considered habitual traffic offender statutes like 21 *Del.C.* § 2802 with regard to the question of whether the statutory "accumulation" period (e.g., 5 years) refers to the period of time in which the actual offenses occurred or in which the convictions were entered. Isham, *supra* 48 A.L.R.4th 367 § 69. Virtually without exception, those courts considering the issue have found that, in determining habitual offender status, only the dates of *offenses* were relevant. *Id.* These cases quite clearly show a focus upon the number and timing of *offenses* and not convictions in the interpretation of habitual offender statutes that deal with multiple violations of the motor vehicle laws.

A case with facts almost identical to the instant case is *Hewitt v. Commonwealth,* Pa. Commw., 541 A.2d 1183 (1988). In *Hewitt,* the question before the court was whether the five-year period set forth in the Pennsylvania habitual offender statute was based upon the dates of violations or of convictions.[4] The court held that the dates of violations, not convictions, controlled. Moreover, the defendant in *Hewitt* was not convicted of his second offense until after the commission of his third offense. The second and third offenses, as in the instant case, were adjudicated on the same day. Although the fact that the second conviction did not precede the third offense was not raised directly in *Hewitt,* that court implicitly approved the application of a similarly worded habitual offender

statute in that case, like the case at bar, where the convictions were not sequential.

Other states with similar motor vehicle habitual offender statutes have found the dates of offenses—not convictions—to be controlling in the determination of habitual offender status. *See Hardison v. Boyd,* Ga. App., 329 S.E.2d 198 (1985) (holding that date offense was committed, and not date of conviction for that offense, determines whether offense can be considered toward habitual offender status); *Texas Dept. of Public Safety v. King,* Tex.Supr., 366 S.W.2d 215 (1963) (holding that where qualifying offenses were committed within the statutory 12 month period, predicate convictions did not have to become final within that time); *Schrag v. Altman,* Colo.App., 767 P.2d 805 (1988) (concluding that license was properly revoked where dates of offenses, but not convictions were within the statutory time period). *Schrag* emphasized the public policy goal behind the Colorado habitual offender statute—to remove unsafe drivers from the roads—and held that, unlike penal statutes, "statutes [regarding public safety] are not to be given a construction that is a convoluted distortion of legislation enacted for the benefit of the public generally." 767 P.2d at 806.

The plain language of 21 *Del.C.* § 2802 shows the emphasis to be on the timing of "offenses" and not, as Defendant contends, of "convictions" (although, of course, an enumerated offense to qualify must ultimately result in a conviction). Section 2802 applies to persons who have "accumulated convictions" within the prescribed period, without any provision as to *when* those convictions must occur in relation to other offenses (except, as discussed *infra,* with respect to convictions occurring in a 24–hour period).

---

> be fined not less than $500 nor more than $2,000 and imprisoned not less than 60 days nor more than 18 months....

3. "[D]riving under the influence of alcohol [is] a criminal offense under 21 *Del.C.* § 4177." *Cook v. Oberly,* Del.Ch., 459 A.2d 535, 537 (1983).

4. Vehicle Code, 75 *Pa.C.S.* § 1542(a) defined an habitual offender as

> ... any person whose driving record, as maintained in the department, shows that such person has accumulated the requisite number of convictions for the separate and distinct offenses described and enumerated in subsection (b) committed after the effective date of this title and within any period of five years thereafter.

The convictions under § 2802(1) must be for three or more "separate and distinct *offenses* ..." (emphasis added). Subsection (1) itself enumerates specific included offenses, which must arise "out of *separate acts*" (emphasis added). The provision that multiple included offenses occurring within a 24–hour period are to be considered as one offense shows the statute's concern with the timing of *offenses;* however, such concern is limited solely to excluding multiple offenses occurring within a 24–hour period.

The clearly stated policy of § 2801 of "foster[ing] public safety on the highways of this State" adds additional support to this Court's conclusion that the proper interpretation of Chapter 28 should be the frequency of a driver's *offenses* and not the sequential timing of arrests, convictions and sentencings. *Kamalski,* 429 A.2d at 1319; 21 *Del.C.* § 2801. The statute is designed to revoke the driving privileges of those who repeatedly (but not within a 24 hour period) violate serious motor vehicle laws. As there is almost always some time lapse between an offense and a conviction, adopting Defendant's argument would be tantamount to finding that, for habitual offender purposes, motorists are not to be held accountable for subsequent violations during this intervening time. Such a conclusion would manifestly violate the policy behind the statute.

The *Villa* case itself lends strong, albeit implicit, support to this construction. In *Villa,* the defendant had been convicted in October 1980 of Driving while License Suspended and had then been "twice convicted in August 1981" for Driving in Violation of Conditional License (21 *Del.C.* § 2733(i)). *Villa,* 456 A.2d at 1231. Although the issue of successive convictions was not squarely raised in *Villa,* it may reasonably be inferred that the sentencing for the second offense probably (although not necessarily) did not precede the defendant's arrest for the third offense, since he was "convicted" of both in

August 1981. Indeed, *Villa* held that "[o]nce the *number* of a person's convictions meets the statutory requirements (21 *Del.C.* § 2802), the Secretary of Public Safety must certify the conviction record to the Attorney General (21 *Del.C.* § 2803) ..." *Id.* (emphasis added).

By her October 13, 1993 guilty plea, Defendant pled guilty to her Driving Under the Influence offense of February 2, 1993 and her reckless driving offense of May 20, 1993. Guilty pleas are considered "conviction[s]" under 21 *Del.C.* § 2802(4). The fact that, because of the plea agreement, Defendant's second conviction did not precede her third offense does not negate the statute's application, so long as the offenses themselves (1) were "separate and distinct," (2) occurred within the prescribed five-year period and (3) did not occur within a 24–hour period. The two convictions on October 13, 1993, for separate and distinct offenses, coupled with Defendant's 1990 conviction, placed Defendant within the reach of § 2802(1).[5]

**B. A prior warning about the potential consequences of 21 *Del.C.* ch. 28 is not required.**

Defendant further contends that she cannot be held liable for enhanced penalties since, she alleges, she was not advised of this possibility at the time of her prior convictions. The Delaware Supreme Court, in *Villa,* has specifically addressed this issue as it relates to the habitual offender statute, holding that, at the time of a guilty plea, "[a] magistrate [is] not required to inform [a defendant] that he [is] subject to license revocation and habitual offender proceedings." *Villa,* 456 A.2d at 1232. *See State v. Carr,* Del.Supr., 641 A.2d 833 (1994) (holding that an earlier conviction for Driving Under the Influence followed by a second like offense "will subject the offender to second offense sanctions, whether or not the offender was

---

5. As the State and Defendant agree, the five-year period of license revocation under § 2809 is a severe civil penalty. Under the holding of this opinion, a five year revocation period could theoretically apply to three relatively less serious offenses listed under § 2802 that occurred almost contemporaneously to each other (but with each separated from the other by at least a 24– hour period). However, any requirement of successive convictions under § 2802, akin to the requirement of 11 *Del.C.* § 4214, must result from amendment by the General Assembly of Title 21, Ch. 28 to that effect, and not by judicial decree. Further, the Attorney General is not prevented from exercising prosecutorial discretion in appropriate cases brought under ch. 28.

expressly warned of that result"); *see also Krewson v. State*, Del.Supr., 552 A.2d 840, 843 (1988). Accordingly, Defendant's latter argument must fail.

### *III. CONCLUSION*

For the foregoing reasons, Defendant's Motion to Dismiss the Petition to Declare her an Habitual Offender is DENIED. The requirements of 21 *Del.C.* § 2802 having been met, this Court declares Defendant an habitual offender and terminates her driving privileges for a five year period effective June 15, 1994, pursuant to 21 *Del.C.* § 2809 and § 2810. A separate Order (attached to the original petition) has been signed.