DECISION AND JUDGMENT ENTRY
{¶ 1} The Athens County Municipal Court found Thomas Staten guilty of operating a motor vehicle while under the influence of alcohol ("OMVI"). Staten appeals the court's decision to deny his motion to suppress. Staten contends that the police officer stopped him and ordered him to perform field sobriety tests without a reasonable, articulable suspicion that he was engaged in illegal behavior. Because we find that the officer's initial contact with Staten constituted a consensual encounter, and because the officer developed a reasonable, articulable suspicion of OMVI from his observations during that encounter, we disagree. Staten next contends that the trial court should not have considered his performance on the two standardized field sobriety tests when evaluating his motion to suppress, because the State did not prove that the police officer administered the test in strict compliance with the standards adopted by the National Highway Traffic Safety Administration ("NHTSA"). Since the State bore the burden of proving strict compliance upon Staten's challenge to the tests, we agree. Finally, Staten contends that, without the standardized field sobriety tests, the officer did not possess probable cause to arrest him. Because the officer observed several other indicators of intoxication, and because the officer conducted several non-standardized field sobriety tests that indicated impairment, we disagree. Thus, although the trial court erred in considering the standardized field sobriety tests, the error was not prejudicial to Staten. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} On July 3, 2002, Officer Brian Lushbaugh of the Athens City Police Department observed a group of individuals standing next to a parked car, one of whom was visibly intoxicated and holding a six-pack of beer. Officer Lushbaugh looked away, and when he looked back toward the car, the individuals were inside and the car was pulling away. Officer Lushbaugh followed the car for approximately five blocks. While he did not notice any moving violations, he did note that the driver made a couple of turns that were wide and slow. Additionally, Officer Lushbaugh noticed that the driver took a circuitous route to arrive at its ultimate destination, a parking area parallel to an alley.
 {¶ 3} Officer Lushbaugh did not enter the alley, but stopped and watched the car from the adjacent street. He was aware that several thefts occurred nearby the previous evening. He ran the car's license plates, and noted that they were connected to a Jackson, Ohio address. He did not hear any noise or observe any movement for a period of approximately three minutes. Officer Lushbaugh shined his spotlight to illuminate the alley, and saw the individuals still sitting in the car.
 {¶ 4} Officer Lushbaugh approached the car and asked the driver, Staten, what he was doing in the area and whether he had any identification. Officer Lushbaugh immediately noticed a strong odor of alcohol coming from the vehicle. He noticed that the intoxicated individual from the parking lot was sitting in the backseat. Nonetheless, Officer Lushbaugh believed that at least some of the alcoholic odor was coming from Staten. Staten had some difficulty in extracting his driver's license from his wallet. While talking to Staten, Officer Lushbaugh noticed that Staten slurred his speech. Staten also had watery eyes and a flushed face.
 {¶ 5} At that point, Officer Lushbaugh suspected that Staten was committing OMVI. He asked Staten to exit the car to perform some field sobriety tests. When Staten exited the car, Officer Lushbaugh noticed that the odor of alcohol stayed with him. Officer Lushbaugh asked Staten to perform two standardized field sobriety tests: the Horizontal Gaze Nystagmus ("HGN") test and the one-legged stand test.
 {¶ 6} Officer Lushbaugh also asked Staten to perform three non-standardized tests. He instructed Staten to perform a finger-to-nose test five times. On all five attempts, Staten missed his nose. On one attempt, Staten missed his nose by an inch and a half. Officer Lushbaugh also had Staten perform a finger-count exercise and a hand-clap exercise. On each of those, Staten exhibited signs of impaired coordination.
 {¶ 7} Officer Lushbaugh arrested Staten for OMVI, a violation of R.C. 4511.19. At the Athens City Police Department, Officer Lushbaugh administered a breath test, which gave a reading of .203. Officer Lushbaugh charged Staten with violating R.C. 4511.19(A)(1) and4511.19(A)(6).
 {¶ 8} Staten entered a not guilty plea and filed a motion to suppress. In his motion, Staten alleged that Officer Lushbaugh did not possess a reasonable, articulable suspicion to stop him and conduct field sobriety testing. Staten also alleged that Officer Lushbaugh did not conduct the field sobriety tests in strict compliance with the NHTSA manual, and that without the non-compliant tests, Officer Lushbaugh did not possess probable cause to arrest him.
 {¶ 9} Officer Lushbaugh testified at the hearing on the motion regarding his actions leading up to and including his initial encounter with Staten. Officer Lushbaugh also testified regarding Staten's performance on each of the field sobriety tests. The State did not question Officer Lushbaugh regarding the manner in which he conducted the NHTSA standardized field sobriety tests.
 {¶ 10} The trial court found that Officer Lushbaugh possessed a reasonable, articulable suspicion to stop Staten, and that Officer Lushbaugh then gained a reasonable, articulable suspicion to detain Staten for field sobriety testing. In its decision, the trial court listed factors, including Staten's performance on the two standardized field sobriety tests, which combined to form the totality of circumstances upon which Officer Lushbaugh derived sufficient probable cause to arrest Staten. The court denied Staten's motion to suppress.
 {¶ 11} Staten withdrew his not guilty plea and entered a plea of no contest to violating R.C. 4511.19(A)(1). In exchange, the State dismissed the R.C. 4511.19(A)(6) charge. The trial court sentenced Staten accordingly. Staten appeals, asserting the following assignments of error: "I. The trial court erred in denying appellant's motion to suppress by finding that the officer had an articulable and reasonable suspicion to stop the defendant and/or make contact with the defendant in his vehicle. II. The trial court erred in denying appellant's motion to suppress by finding that the officer had further articulable and reasonable suspicion to detain the defendant for field sobriety testing. III. The trial court erred in denying appellant's motion to suppress by finding that the officer administered the field sobriety tests in strict compliance with the standardized testing procedures set forth in the NHTSA manual as required by State v. Homan. IV. The trial court erred in denying appellant's motion to suppress by finding that the officer had probable cause to arrest the defendant for violating 4511.19."
 II. {¶ 12} Each of Staten's four assignments of error relate to the trial court's denial of his motion to suppress.
 {¶ 13} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United States v.Martinez (C.A. 11 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Carter (1995), 72 Ohio St.3d 545, 552. A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. The appellate court then applies the factual findings to the law regarding suppression of evidence. An appellate court reviews the trial court's application of the law to those facts under the de novo standard of review. State v. Anderson (1995), 100 Ohio App.3d 688,691.
 III. {¶ 14} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions. California v. Acevedo (1991), 500 U.S. 565;State v. Tincher (1988), 47 Ohio App.3d 188. If evidence is obtained through actions that violate an accused's Fourth Amendment rights, exclusion of the evidence at trial is mandated. Mapp v. Ohio (1961),367 U.S. 643.
 A. {¶ 15} Staten first contends that the trial court erred by denying his motion to suppress because Officer Lushbaugh stopped him without reasonable, articulable suspicion that he was engaged in criminal activity. The State contends Officer Lushbaugh's initial conversation with Staten constituted a consensual encounter, not a detention giving rise to the need for reasonable, articulable suspicion and that, furthermore, Officer Lushbaugh also possessed reasonable, articulable suspicion that Staten was engaged in criminal activity.
 {¶ 16} Not every encounter between a citizen and a law enforcement official implicates the state and federal prohibition on unreasonable searches and seizures. California v. Hodari D. (1991), 499 U.S. 621;State v. Taylor (1995), 106 Ohio App.3d 741. The United States Supreme Court has created three categories of police-citizen contact to identify the separate situations where constitutional guarantees are implicated: (1) consensual encounters, (2) investigative or "Terry" stops, and (3) arrests. See Florida v. Royer (1982), 460 U.S. 491, 501-507; UnitedStates v. Mendenhall (1980), 446 U.S. 544, 553; Lyndhurst v. Sadowski
(Sept. 2, 1999), Cuyahoga App. No. 74313.
 {¶ 17} Police may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion of criminal activity. Mendenhall at 556. Encounters between the police and the public are consensual when the police approach an individual in a public place, engage the person in conversation, and request information, as long as the person is free to walk away. See Mendenhall at 554; State v. Jones
(1996), 112 Ohio App.3d 206, 211. An officer's request to examine a person's identification or search his or her belongings does not render an encounter non-consensual; nor does the officer's neglect to inform the individual that he is free to walk away. See Florida v. Rodriguez
(1984), 469 U.S. 1; Florida v. Bostick (1991), 501 U.S. 429; Jones at 211-213. A "seizure" giving rise to Fourth Amendment concerns occurs only when, in view of all the circumstances surrounding the incident, the police officer, either by physical force or by show of authority, restrains the person's liberty so that a reasonable person would not feel free to decline the officer's request and walk away. State v. Williams
(1990), 51 Ohio St.3d 58, 61; Jones at 211. Factors suggesting that a seizure has occurred include the presence of multiple police officers, the displaying of a weapon by the police, the use of language suggesting that compliance with police requests is compelled, and the physical touching of the person. Mendenhall at 554; Jones at 211.
 {¶ 18} An encounter may be consensual when a police officer approaches and questions individuals in or near a parked car. State v.Johnston (1993), 85 Ohio App.3d 475, 478; State v. Crumrine, Stark App. No. 2002CA281, 2003-Ohio-2178, ¶ 17; State v. Woodgeard, Fairfield App. No. 01CA50, 2000-Ohio-3936, ¶ 34. See, also, United States v.Castellanos (D.C. Cir. 1984), 731 F.2d 979; United States v. Pajari (8th Cir. 1983), 715 F.2d 1378; Atchley v. State (Ala.App. 1981),393 So.2d 1034 (no seizure where officer approached vehicle to inquire of sleeping occupant); Buckingham v. State (Del. 1984), 482 A.2d 327
(inquiry of persons in a stalled car not a seizure); Lightbourne v.State (Fla. 1983), 438 So.3d 380 (no seizure where officer approached parked car and asked occupants a few questions). Likewise, an encounter may be consensual even if it occurs on private property. Williams,51 Ohio St.3d at 61; State v. Haberman (Jun. 2, 2000), Fairfield App. No. 99CA68 (no seizure when officer asked person to step out of tent pitched in private yard); State v. Szewczyk (Sept. 14, 1999), Mahoning App. No. 98CA20 (no seizure when police encountered driver making purchase at a drive-thru shop); State v. Wolske (May 29, 1998), Wood App. No. WD-97-61 (no seizure when officer approached truck parked in parking lot with "private property" signs posted); but see State v. Reisbeck, Monroe App. No. 862, 2002-Ohio-1155 (seizure occurred when officer followed woman's vehicle, parked directly behind her, yelled for her to stop as she walked toward house, ordered her to come back to the cruiser, and told her he was about to pull her over because her turns were kind of wide).
 {¶ 19} Here, Officer Lushbaugh followed Staten's vehicle, but at enough of a distance that he was not sure whether Staten was aware of his presence. Officer Lushbaugh did not follow Staten into the alley or park behind him, but rather waited at a distance from the adjoining street. Officer Lushbaugh did not yell at Staten, did not attempt to prevent Staten from entering his home, and did not physically contact Staten. No evidence indicates that Officer Lushbaugh drew a weapon or otherwise made a show of force. Officer Lushbaugh did not activate his cruiser lights. Rather, Officer Lushbaugh merely used a spotlight to illuminate the alley. He simply approached Staten's vehicle and asked to examine his identification. We find that this did not constitute a seizure within the meaning of the Fourth Amendment. While Officer Lushbaugh later testified at the suppression hearing that he conducted a "Terry stop," Officer Lushbaugh is not a judge or lawyer qualified to make such a determination, and furthermore a police officer's subjective intentions play no role in analysis of investigative stops or probable causeFourth Amendment analysis. See Whren v. United States (1996), 517 U.S. 806,813; In re Nesser, Ross App. No. 00CA2551, 2000-Ohio-1949; State v.Thompson (Mar. 12, 1997), Athens App. No. 96CA1748.
 {¶ 20} In applying the law to the undisputed facts of this case, we find that, because Officer Lushbaugh did not, by physical force or by show of authority, restrain Staten's liberty so that a reasonable person would not feel free to decline Officer Lushbaugh's request for identification and walk away, Officer Lushbaugh did not seize Staten. Therefore, we overrule Staten's first assignment of error.
 B. {¶ 21} In his second assignment of error, Staten contends that the trial court erred in finding that Officer Lushbaugh possessed reasonable, articulable suspicion to detain Staten and ask him to perform field sobriety tests after Staten produced his identification and informed Officer Lushbaugh that he lived in the adjacent house. Staten contends that the field sobriety tests went beyond the scope of the purpose for Officer Lushbaugh's initial detention of Staten, namely, his concern regarding recent thefts. The State contends that Officer Lushbaugh possessed ample reasonable and articulable suspicion to detain Staten because Officer Lushbaugh observed signs of intoxication as soon as he initiated contact with Staten.
 {¶ 22} The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer possesses a reasonable suspicion, based upon specific and reasonable facts, which, taken together with rational inferences from those facts, warrants the belief that criminal behavior is imminent. Terry v. Ohio (1968), 392 U.S. 1; United States v.Brigoni-Ponce (1978), 422 U.S. 873; State v. Andrews (1991),57 Ohio St.3d 86. To justify an investigative stop, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped is about to commit a crime. Terry at 20. The propriety of an investigative stop must be reviewed in the light of the totality of the circumstances. State v.Bobo (1988), 37 Ohio St.3d 177, 178.
 {¶ 23} Staten contends that the totality of circumstances did not give Officer Lushbaugh reason to believe that Staten was about to commit a burglary. Officer Lushbaugh's question regarding why he was parked in the alley was resolved when Staten replied that he lived there. Staten further contends that Officer Lushbaugh did not have reason to believe that he was driving under the influence. Specifically, Staten notes that the odor of alcohol Officer Lushbaugh noticed was explained when Officer Lushbaugh saw Staten's obviously intoxicated passenger. Additionally, Staten notes that Officer Lushbaugh did not observe Staten commit any moving violations during the five-block drive from the bar to his residence.
 {¶ 24} While some factors indicated that Staten was not engaged in illegal activity, Officer Lushbaugh's testimony indicates that he observed several factors which, taken together, would lead a reasonable person to believe that Staten was driving while under the influence of alcohol. Specifically, Officer Lushbaugh immediately noticed that Staten had difficulty removing his driver's license from his wallet, indicating impaired manual dexterity. In addition, Officer Lushbaugh testified that he observed a fairly strong odor of alcohol, and that it appeared at least some of the odor was coming from Staten. As Officer Lushbaugh began to speak with Staten, he noticed Staten's slurred speech, watery eyes, and flushed face. Although Officer Lushbaugh did not observe Staten commit any moving violations, he did note that Staten took a circuitous route to his destination and that Staten made his turns slow and wide. We find that these specific facts, taken together with rational inferences from those facts, warrant the belief that Staten was engaged in OMVI. Accordingly, we find that the trial court did not err in ruling that Officer Lushbaugh lawfully requested Staten to perform field sobriety tests, and we overrule Staten's second assignment of error.
 C. {¶ 25} In his third assignment of error, Staten contends that the trial court erred in denying his motion to suppress by considering the results of the one-legged stand and HGN field sobriety tests in its probable cause determination. Staten contends that the trial court should not have considered the test results, because the State did not carry its burden of proving that Officer Lushbaugh administered the field sobriety tests in strict compliance with NHTSA standards. We first address whether the trial court erred in improperly considering the test results.
 {¶ 26} Under Ohio law, "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." State v. Homan (2000), 89 Ohio St.3d 421, paragraph one of the syllabus, 2000-Ohio-212. Quoting from the NHTSA manual, the Supreme Court noted "if any one of the standardized field sobriety test elements is changed, the validity is compromised." Homan at 425.
 {¶ 27} Officer Lushbaugh conducted five field sobriety tests: two standardized tests from the NHTSA manual and three non-standardized tests. The State concedes that the record does not contain any testimony concerning Officer Lushbaugh's compliance with the NHTSA manual in conducting the standardized tests. In its brief, the State blames this upon the trial court's interpretation of Homan, supposedly discussed with counsel for both parties prior to the hearing. According to the State, the trial court informed the parties prior to the hearing that it refuses to allow testimony regarding an officer's training or the manner in which he or she conducts field sobriety tests, because the court believes that an officer cannot strictly comply with the NHTSA manual outside of a laboratory environment. The State contends that after this pronouncement by the court, it believed the matter was resolved.
 {¶ 28} While the State's assertions may be true, the record does not contain anything to support them. The State was aware that Staten challenged the results of the field sobriety tests on the grounds that the tests were not conducted in strict compliance with the NHTSA manual. Nonetheless, the State introduced evidence regarding Staten's performance on the standardized field sobriety tests. The State did not attempt to proffer evidence regarding the manner in which Officer Lushbaugh conducted the tests, and therefore we do not know whether the trial court would have allowed it. We do know, however, that Staten's counsel did not simply acquiesce to the State's introduction of the NHTSA standardized test results without proof that the tests were conducted properly. To the contrary, Staten's counsel argued at length during the hearing that, pursuant to Homan, the court could not consider the standardized test results.
 {¶ 29} In its decision, the trial court lists the two standardized field sobriety tests among the totality of circumstances that provided Officer Lushbaugh with probable cause to arrest Staten. The trial court considered the results of the standardized tests even though: (1) Staten challenged the manner in which Officer Lushbaugh conducted the field sobriety tests, and (2) the State offered no evidence proving strict compliance with the NHTSA manual. Thus, by considering the test results, the trial court ignored the Ohio Supreme Court's ruling in Homan.
 {¶ 30} While this court, like many others, may not agree with theHoman decision, the Ohio Supreme Court is the ultimate authority of law in this state. Hayes v. State Med. Bd. of Ohio (2000), 138 Ohio App.3d 762,769. We cannot ignore binding precedent from the Ohio Supreme Court.Plumb v. Revier City Erectors, Inc. (2000), 138 Ohio App.3d 684, 688. Therefore, we find that the trial court erred in considering evidence of Staten's performance on the standardized tests in determining whether Officer Lushbaugh possessed probable cause to arrest Staten.
 D. {¶ 31} In his fourth assignment of error, Staten contends that without the one-legged stand and HGN tests, Officer Lushbaugh did not possess probable cause to arrest him, and therefore the trial court erred in denying his motion to suppress.
 {¶ 32} The standard for determining whether the police have probable cause to arrest an individual for DUI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Homan, 89 Ohio St.3d 421 at 427, citing Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145; State v. Timson
(1974), 38 Ohio St.2d 122, 127. To make this determination, the trial court should consider the totality of facts and circumstances surrounding the arrest. Homan, citing State v. Miller (1997), 117 Ohio App.3d 750,761, and State v. Brandenburg (1987), 41 Ohio App.3d 109. "While field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded for lack of strict compliance." Homan at 427.
 {¶ 33} The Homan Court excluded the three standardized NHTSA field sobriety tests because the officer did not strictly comply with NHTSA instructions for administering the tests. However, the Court nonetheless found sufficient probable cause in Homan based upon the facts that the defendant admitted to drinking, and the officer observed erratic driving, red and glassy eyes, and an odor of alcohol on the defendant's breath.
 {¶ 34} In construing Homan, courts have applied the strict compliance exclusionary rule to standardized NHTSA tests, but not to non-standardized NHTSA tests. State v. Walker, 149 Ohio App.3d 296,2002-Ohio-4362; State v. Menking, Wash. App. No. 02CA66, 2003-Ohio-3515;Rocky River v. Horvath (Apr. 11, 2002), Cuyahoga App. No. 79997. Based upon the "totality of circumstances" standard articulated by the Supreme Court, non-standardized NHTSA tests are useful sources of information regarding the suspect's sobriety. "If circumstances dictate that methods other than strictly standardized tests must be used in determining whether a driver is under the influence of alcohol, then an officer should be able to use nonstandardized tests that, based upon his experience, can indicate impairment by alcohol." Walker at ¶ 14.
 {¶ 35} In this case, Officer Lushbaugh testified that the ground was not entirely level at the site of the field sobriety testing. Thus, the circumstances dictated that Officer Lushbaugh also use non-standardized tests. Officer Lushbaugh conducted three field sobriety tests that are not NHTSA standardized field sobriety tests. No law requires law enforcement officers to administer non-standardized tests in strict compliance with NHTSA recommendations. Menking, supra, at ¶ 15. Officer Lushbaugh observed that Staten completely missed his nose on each of five attempts to perform the finger-to-nose test. Officer Lushbaugh also observed that Staten's coordination was "off" in his attempts to perform the finger-count test and the hand-clap test. In addition, Officer Lushbaugh had already observed the odor of alcohol coming from Staten, had observed Staten exhibit difficulty in producing his driver's license, and had observed Staten's slurred speech, watery eyes, and flushed face. Officer Lushbaugh noticed that Staten took a circuitous route home, as if he were confused, and noticed Staten's turns were slow and wide. Taken together, even when we exclude the results of the one-legged stand and HGN tests, we find that the totality of circumstances provided Officer Lushbaugh with probable cause to arrest Staten. Accordingly, we overrule Staten's final assignment of error.
 E. {¶ 36} Having found that Officer Lushbaugh possessed probable cause to arrest Staten even without the standardized field sobriety test results, we return to our analysis of Staten's third assignment of error. Staten asserts that the trial court erred in denying his motion to suppress by relying on its finding that Officer Lushbaugh conducted the field sobriety tests in strict compliance with the NHTSA manual. Because Officer Lushbaugh possessed probable cause independent of the standardized tests, the trial court's error in considering the test results did not affect Staten's substantial rights. Any error that does not affect a criminal defendant's substantial rights constitutes harmless error, and will not cause reversal of the defendant's conviction. Crim.R. 52(A); State v. Brown, 65 Ohio St.3d 483, 485, 1992-Ohio-61. Therefore, even though the trial court erred in considering the standardized test results, the trial court did not err in denying Staten's motion to suppress. Accordingly, we overrule Staten's third assignment of error.
 IV. {¶ 37} In conclusion, we find that Officer Lushbaugh's initial contact with Staten was a consensual encounter that did not give rise toFourth Amendment concerns. Therefore, we overrule Staten's first assignment of error. Upon making contact with Staten and observing signs of impairment, Officer Lushbaugh gained a reasonable, articulable suspicion that Staten was engaged in operating a motor vehicle while impaired by alcohol. Therefore, we overrule Staten's second assignment of error. The trial court erred in considering the results of the standardized field sobriety tests, because the State failed to introduce evidence regarding whether Officer Lushbaugh administered the tests in strict compliance with NHTSA standards. However, even when we exclude the standardized field sobriety tests from the totality of circumstances analysis, we nonetheless find that Officer Lushbaugh possessed probable cause to arrest Staten. Therefore, we overrule Staten's third and fourth assignments of error.
 {¶ 38} Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. and Abele, J.: Concur in Judgment and Opinion.