Kevin L. ZIMMERMAN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 130, 1996.

Supreme Court of Delaware.

Submitted: Feb. 19, 1997.
Decided: April 2, 1997.
Revised: April 10, 1997.

**312**

Bernard J. O'Donnell, Assistant Public Defender, Wilmington, for Appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, for Appellee.

Before VEASEY, C.J., and WALSH and BERGER, JJ.

VEASEY, Chief Justice:

In this consolidated appeal of sentences imposed on two convictions of the defendant for driving under the influence of alcohol ("DUI"), we consider first the proper standard for admitting evidence of "horizontal gaze nystagmus" ("HGN")[1] tests in prosecutions for driving under the influence of alcohol or drugs. The HGN test is scientific in nature and the State must establish a proper foundation before evidence about the test is admitted. Because the trial court admitted the results of an HGN test without a proper scientific foundation in the first conviction, we hold that the court abused its discretion. We find that the error in this case was prejudicial. Accordingly, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

The second appeal raises the issue of the proper meaning of the term "offense" as it is used in 21 *Del.C.* § 4177(d), the sentencing statute for driving while under the influence. In view of our reversal of the first conviction, we need not necessarily address the issue raised in the second appeal. Nevertheless, for the future guidance of trial courts, and because the issue may arise in later proceedings in this case, we take this opportunity to clarify the meaning of the term. We hold that only when an individual is convicted of a violation of 21 *Del.C.* § 4177(a), where such violation occurred after three prior convictions under section 4177(a), may he or she be sentenced as a fourth time offender under section 4177(d)(4).

*Facts*

On June 25, 1995, Kevin L. Zimmerman was arrested for driving under the influence. He was confronted in the parking lot of a bank, after using the MAC machine, because two women reported to Officer Peter B. Sawyer that the white van (allegedly driven by Zimmerman) at the MAC machine almost hit someone. At the time, Sawyer detected a strong odor of alcohol from Zimmerman and noted that Zimmerman had bloodshot, glassy, red eyes. Zimmerman refused to take two field sobriety tests (reciting the alphabet backwards and counting backwards), which are divided attention tests. Zimmerman alleged that he had a "right not to do it." He did respond to a third divided attention test, a request to provide his birthday. But he also provided his social security number, without prompting from Sawyer. Zimmerman also refused to perform the one-

1. As the Superior Court noted in *Ruthardt,* [t]he HGN test is one of several field sobriety tests recommended by the National Highway Traffic Safety Association [("NHTSA")] to assist officers in determining whether an operator of a vehicle is driving while intoxicated....

The theory behind the test is that there exists a medically proven correlation between the consumption of alcohol and the existence of nystagmus in the human eye....
*State v. Ruthardt,* Del.Super., 680 A.2d 349, 351–52 n. 4 (1996).

leg stand test, the finger-to-nose test and a PBT test at the scene.

Sawyer did, however, administer a horizontal gaze nystagmus ("HGN") test using a pen. The test checks for involuntary eye movements using six "clues." Zimmerman failed the test in all respects. After being arrested, Zimmerman stumbled into the police station, dropped the phone book twice, and dialed the same number twice, asking for the same person. Zimmerman refused to take an intoxilyzer test. At the time of his arrest, he claimed that he was taking the prescription drug Xanax, to reduce his anxiety.

On August 26, 1995, Zimmerman was arrested again and charged with driving under the influence. A chemical analysis of Zimmerman's blood revealed a blood alcohol content ("BAC") of 0.22%, well over the legal limit of 0.10%. On December 13, 1995, Zimmerman was convicted of the earlier, June 25, 1995, incident after a bench trial. On December 28, 1995, after a jury trial, Zimmerman was convicted of the later, August 26, 1995, driving under the influence charge.

Zimmerman was sentenced on February 23, 1996 for both offenses. For the conviction for the June 25, 1995 incident, Zimmerman was sentenced as a third-time offender. For the conviction for the August 26, 1995 incident, Zimmerman was sentenced as a fourth-time offender. Zimmerman's prior driving under the influence arrests occurred on November 18, 1991 and December 2, 1993.

Zimmerman filed a consolidated appeal on these convictions. For the June 25, 1995 incident, Zimmerman alleges that the Superior Court prejudicially erred by considering the HGN test without sufficient scientific medical expert foundation. For the August 26, 1995 incident, he alleges that the Superior Court plainly erred when it imposed mandatory minimum penalties for a "fourth" offense of driving under the influence because, at the time of the commission of the alleged "fourth" offense, Zimmerman had not been convicted of the predicate third offense for the purpose of the mandated statutorily enhanced penalty.

### The June 25, 1995 Arrest

■ Zimmerman argues that the Superior Court abused its discretion in the non-jury trial of the June 25, 1995 DUI charge by permitting the arresting officer, Sawyer, to testify about the results of the HGN test administered to Zimmerman, without requiring a proper foundation. This Court reviews a trial court's evidentiary rulings for an abuse of discretion.[2]

At trial, the defense objection was: "I object, unless the State can establish this as an accepted test, that this test has been accepted in the State of Delaware as a proper test for the detection of intoxication."[3] The trial judge stated:

> I will listen to the officer's testimony concerning it and determine whether or not it has relevance. There is no list of tests that need to be accepted. We are attempting to determine what the defendant's condition was at the time of the incident and whether this has relevance to the trier of fact depends on an explanation of the officer administering it.[4]

Zimmerman argues that the Superior Court erroneously disregarded the evidentiary requirement that the proponent of "scientific, technical or other specialized knowledge" must demonstrate its general acceptance in the scientific community.[5]

---

2. See *Lampkins v. State*, Del.Supr., 465 A.2d 785, 790 (1983) (relevance); *Firestone Tire and Rubber Co. v. Adams*, Del.Supr., 541 A.2d 567, 570 (1988) (probative value).

3. Cf. *Best v. State*, Del.Supr., 328 A.2d 141, 143 (1974) (holding that the doctrine of *stare decisis* applies to the issue of reliability of new scientific techniques, the intoxilyzer in that case).

4. Tr. at 11 (ruling from the bench).

5. The evidentiary requirement Zimmerman refers to is set forth in rule 702 of the Delaware Rules of Evidence. Rule 702 reads as follows:
   If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.
   D.R.E. 702. *See also Nelson v. State*, Del.Supr., 628 A.2d 69, 73 (1993) (noting that the general

At the conclusion of all of the evidence, including Zimmerman's own testimony in which he admitted drinking one or two beers the afternoon of June 25, 1995 and driving that evening, the trial judge found the defendant guilty of driving under the influence.[6] Because there were no chemical tests performed to determine Zimmerman's blood alcohol content, the trial judge was required to evaluate critically the arresting officer's observations of Zimmerman. Regarding the HGN test, the judge stated:

> ... and finally, the test ..., I have to admit I can understand the standard by which the officer applied it. I am not exactly sure of its significance, and it would seem to me a purely objective test, although with perhaps some additional evidence, I might see it as subjective. In any case, the officer, having administered a test in which he had been instructed was informative, found that this defendant failed it in every conceivable way. I certainly would not base a conviction on that test alone, but then, again, it becomes one of the numerous factors involved here.[7]

In *Ruthardt,* decided after the case *sub judice,* the Superior Court recognized the scientific validity of HGN test evidence both for the purposes of establishing probable cause and as substantive evidence of intoxication.[8] The Superior Court's opinion in *Ruthardt* is well reasoned. Accordingly, we adopt its scientific analysis and expert qualification portions as the appropriate standard for accepting HGN evidence.[9] Because the HGN test is scientific, a proper foundation for testimony about it must be laid.[10]

Therefore, "prior to the admission of HGN evidence the State must provide [a] proper foundation ... by presenting testimony from an expert with specialized knowledge and training in HGN testing and its underlying principles.... [A] Delaware police officer with specialized training in HGN will suffice." [11] This foundation is necessary to "balance the testimony of the arresting officer, whose bias toward supporting his arrest could cause an inappropriate advocation of the reliability of the test that is unsupport-

acceptance test of *Frye* is not the sole criterion for assessing the admissibility of scientific test results or evidence); *id.* at 73–74 nn. 5–6 (holding that scientific evidence must satisfy the pertinent Delaware Rules of Evidence concerning admission of scientific testimony or evidence, *i.e.,* D.R.E. 401, 402, 403, 702, and 703, and be relevant and reliable).

6. A person is "under the influence" when that person, because of alcohol or drugs, is "less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle." 21 *Del.C.* § 4177(c)(5). *See also* 21 *Del.C.* § 4177(a)(1) (stating that no person shall drive a vehicle when the person is under the influence of alcohol).

7. Tr. at 44–45 (ruling from the bench).

8. *Ruthardt,* 680 A.2d at 362. In *Ruthardt,* the Superior Court held an extensive evidentiary hearing and the issue was briefed by both parties. *Id.* at 352. The court concluded that the HGN test is scientific in nature and not based on common knowledge. *Id.* at 355. *See also Cantrell v. Div. of Motor Vehicles,* Del.Super., C.A. No. 95A–09–001, 1996 WL 453425, at *4 (April 9, 1996) (ORDER) (holding that the HGN test may be considered as a factor in determining probable cause), *aff'd sub nom. Cantrell v. Sha-*

*han,* Del.Supr., No. 185, 1996, 1997 WL 70816 (Feb. 7, 1997) (ORDER).

9. *Id.* at 356–62.

10. *See Ruthardt,* 680 A.2d at 356 (holding that "HGN evidence is scientific and, therefore, must satisfy the pertinent Delaware Rules of Evidence governing the admission of such evidence"). *Cf. McLain v. General Motors Corp.,* Del.Supr., 569 A.2d 579, 584 (1990) (comparing D.R.E. 602 and 702 and distinguishing between personal observations and expert testimony); *Ruthardt,* 680 A.2d at 355 (pointing to the minority position that HGN tests require only the personal observations of the officer administering them).

11. *Ruthardt,* 680 A.2d at 362. *See also id.* at 361–62 nn. 23–25 (discussing when officers may be qualified to testify as experts on HGN).

When establishing a foundation for HGN tests, future cases are not required to establish that the HGN test is reasonably relied upon by experts. *See Ruthardt,* 680 A.2d at 357–60. Under the doctrine of *stare decisis,* the *Ruthardt* court's finding of reasonable reliance by experts, and this Court's acceptance of that finding, will be binding. *See supra* note 3. That is not to say, however, that the existence of conflicting studies cannot be used by the defense to challenge the weight of the evidence. *Ruthardt,* 680 A.2d at 360.

ed by his training or experience." [12] Because there are problems with the "physical application of the HGN test and a risk of misdiagnosis because of other causes of nystagmus," this foundation is necessary to allow the jury to give the evidence its proper weight.[13] But even after a proper foundation is laid, HGN testing is not admissible "to independently and conclusively establish that a defendant's blood alcohol content equaled or exceeded a specific concentration...." [14]

At trial, Officer Sawyer did not testify as to the underlying principles supporting HGN. He testified merely that he was trained to administer the test. Sawyer did not testify about the standards set forth in the NHTSA training manual or that he followed those standards, including the standards for scoring.[15] Although the Superior Court indicated that it understood the "standard" by which the officer applied the test, it also indicated that it was unsure of its significance. Because the Superior Court admitted the evidence without a proper foundation, it was an abuse of discretion to admit the HGN results into evidence to establish guilt. Even if the court found that the evidence was otherwise relevant and probative, the prejudice to Zimmerman, caused by the trier of fact potentially according the evidence too much weight, outweighed its probative value.

"An error in admitting evidence may be deemed 'harmless' when 'the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction.'" [16] Even when the "evidentiary error is of a constitutional magnitude, the convictions may be sustained if the error is 'harmless beyond a reasonable doubt.'" [17]

In addition to the HGN test, the Court noted that Zimmerman: was uncooperative, imprecise in his answers, unsteady on his feet, dropped the phone book twice, and redialed a number that had already proven unsatisfactory. Using the HGN test as "one of the numerous factors involved," the court found that Zimmerman was guilty of driving under the influence.

Based on the above findings, it is not possible to conclude from the record that the court's error was harmless beyond a reasonable doubt.[18] This is especially true in light of the fact that the trial court made particular mention in its ruling that Zimmerman failed the HGN test in "every conceivable way." [19]

12. *Id.* at 361.

13. *Id.* at 360.

14. *Ruthardt*, 680 A.2d at 351.

15. The foundation testimony provided by Sawyer was as follows. First, he testified that he attended a class sponsored by the NHTSA on field sobriety tests and HGN in February of 1994. Second, he testified that he became a certified HGN instructor in January of 1995, after attending another NHTSA class in Washington. Next, he explained in general terms how the test is administered and that the person administering it should look for six clues, three from each eye. He then described in more specific detail the test administered to Zimmerman. Sawyer stated that the test was administered in the parking lot, that it was still light out, and that he used a pen to administer the test. He testified in more specific detail what the three clues were and that he found the three clues in each eye. Sawyer did not testify that the test was performed in accordance with NHTSA standards. *See Ruthardt*, 680 A.2d at 353 (indicating the officer should stand directly in front of the driver and require that the individual stand at attention, feet together and arms to the side, that the test should be performed outside the car in a well-lit area, and that a driver's glasses should be removed and that if the driver is wearing hard contacts the test should not be administered). He also did not testify about the correlation between alcohol ingestion and gaze nystagmus, how other possible causes might be masked, what margin of error has been shown in statistical surveys and the cause of observed symptoms of nystagmus. *Id.* at 361. Testimony such as this is required to lay a proper foundation.

16. *Nelson*, 628 A.2d at 77; *Van Arsdall v. State*, Del.Supr., 524 A.2d 3, 11 (1987).

17. *Nelson*, 628 A.2d at 77.

18. *See Van Arsdall*, 524 A.2d at 11.

19. It may be argued that the error is in fact harmless because, on remand, the reasonable reliance by the scientific community on HGN evidence will have already been established. The foundational error, however, did not depend entirely on whether the HGN test had the appropriate level of scientific acceptance in the community. Here, even if scientific acceptance is established, the foundation was not properly laid in other areas because the testimony was insufficient about the administration of the test, how

### The August 26, 1995 Arrest

On December 28, 1995, when Zimmerman was being tried for the August 26, 1995 DUI charge, the State filed a two page memorandum requesting that upon conviction Zimmerman be sentenced as a fourth-time DUI offender pursuant to the provisions of 21 *Del.C.* § 4177(d)(4). No defense objection was noted at Zimmerman's February 23, 1996 sentencing, where he was sentenced as a fourth-time DUI offender. Because Zimmerman did not object to the August 26, 1995 DUI conviction being treated as a fourth offense subject to enhanced penalties under 21 *Del.C.* § 4177(d)(4), we review this issue for plain error.[20]

At Zimmerman's sentencing, the sentence imposed for the August 26, 1995 conviction conformed with the applicable statutory minimum sentence for a "fourth or subsequent offense occurring any time after three prior offenses." 21 *Del.C.* § 4177(d)(4).[21] Zimmerman argues that, because he was not convicted of his third offense until December 13, 1995, both his conviction for the June 25, 1995 incident and his conviction for the August 26, 1995 incident should be treated as third offenses for sentencing purposes. In support of his argument, Zimmerman cites to two cases. The first case, *Kane v. State*, deals with enhanced penalties for drug convictions based upon prior Title 16 violations.[22] The second, *Hall v. State*,[23] deals with the determination of eligibility for sentencing as an habitual criminal under 11 *Del.C.* § 4214(b).

The State responds to Zimmerman's argument by reference to other cases that have interpreted the enhanced penalty provisions of Title 16 and the Delaware Habitual Criminal Act.[24] Two cases, *Lis* and *Pryor*, deal with statutory interpretation of the word "convicted" as used in 16 *Del.C.* § 4763. The third case, *Buckingham*, addresses the construction of the Delaware Habitual Criminal Act, 11 *Del.C.* § 4214(b). Relying on these cases, the State argues that "[i]f the Delaware General Assembly meant for the enhanced penalties of 21 *Del.C.* § 4177(d)(2–4) only to apply when another DUI offense has been committed after a prior conviction, the Legislature could have utilized the term 'conviction' as defined in 11 *Del.C.* § 222(4),[25] rather than the statutory language of 'offenses.'"

The plain language of § 4177(d) states:

(d) Whoever is convicted of a violation of subsection (a) of this section shall: ...

(4) For a fourth or subsequent offense occurring any time after 3 prior offenses, be guilty of a class E felony....

Based on a careful reading of this section we find that the General Assembly intended to equate convictions with offenses. This reading is supported by the definition of "offense" in the criminal statutes.

While 11 *Del.C.* § 233(a, c) define an "offense" as both an act forbidden by a statute and as a felony or a violation, 11 *Del.C.* § 241 states that "[t]he punishments pre-

---

other possible causes might be masked, the margin of error in the test and the cause of observed symptoms of nystagmus.

**20.** *See* Del.Supr.Ct.R. 8; D.R.E. 103(d); *Tucker v. State*, Del.Supr., 564 A.2d 1110, 1117–18 (1989).

**21.** 21 *Del.C.* § 4177(d)(4), as amended in 1995, provides:
(d) Whoever is convicted of a violation of subsection (a) of this section shall: ...
(4) For a fourth or subsequent offense occurring any time after 3 prior offenses, be guilty of a class E felony, be fined not less than $2,000 nor more than $6,000 and imprisoned not less than 2 years nor more than 5 years. The provisions of § 4177B(e) of this title and any other statute notwithstanding, a court may consider prior offenses out-

side of a 5 year period for sentencing pursuant to this paragraph....
21 *Del.C.* § 4177(d)(4).

**22.** *Kane v. State*, Del.Supr., 327 A.2d 744 (1974).

**23.** *Hall v. State*, Del.Supr., 473 A.2d 352 (1984).

**24.** *See Lis v. State*, Del.Supr., 327 A.2d 746, 748 (1974); *Pryor v. State*, Del.Supr., 453 A.2d 98, 100 (1982); and *Buckingham v. State*, Del.Supr. 482 A.2d 327, 330–31 (1984).

**25.** 11 *Del.C.* § 222(4) defines "conviction" as follows:
(4) "Conviction" means a verdict of guilty by the trier of fact, whether judge or jury, or a plea of nolo contendere accepted by the court.
11 *Del.C.* § 222(4).

scribed by this Criminal Code or any other statute of a criminal nature may be inflicted only after a judgment of conviction...." The definitions in Chapter 11 of the Delaware Code are applicable to section 4177(d)(4) as section 4177(d)(4) defines fourth offenses as felonies. Therefore, we hold that only when an individual is convicted of a violation of 21 *Del.C.* § 4177(a), such violation occurring after three prior convictions under section 4177(a), may he or she be sentenced as a fourth-time offender under section 4177(d)(4).[26]

### Conclusion

We hold that it was an abuse of discretion for the Superior Court to admit the HGN evidence without the proper foundation. Because the error was not harmless, we reverse the appellant's conviction for the June 25, 1995 incident and remand the case for a new trial. Consequently, we also set aside Zimmerman's sentence for the August 26, 1995 incident and remand the case for a new sentencing order consistent with his prior "offenses," as the term is herein defined, as of his original sentencing date, February 23, 1996.

---

**26.** *See also* 21 *Del.C.* § 4177B(e)(2) (equating convictions to offenses for purposes of § 4177). *Compare Kane*, 327 A.2d at 745 (interpreting old 16 *Del.C.* § 4730, which mandated additional penalties in certain circumstances, to require a conviction, not a mere charge, prior to the imposition of additional penal sanctions flowing from a conviction for a second offense); *Id.* at 746 (stating that it "cannot legally be known that an offense has been committed until there has been a conviction"); *Buckingham*, 482 A.2d at 330 (interpreting 11 *Del.C.* § 4214(a) as requiring three separate convictions, each successive to each other, with some chance for rehabilitation after each sentencing, before an individual can

be sentenced as an habitual criminal under § 4214(a)). *But see State v. Wilhere*, Del.Super. 653 A.2d 282, 284–87 (1994) (interpreting 21 *Del.C.* § 2802(1), which defines an habitual motor vehicle offender, to all allow a motorist to be adjudicated as an habitual offender when he has accumulated three convictions for specific driving offenses, even though the third offense takes place prior to a conviction for the second offense); *Id.* at 285–86 (finding an attempt to compare 21 *Del.C.* § 2802(1) to 21 *Del.C.* § 4177(d)(2) flawed because § 4177(d)(2) involves penalty enhancement in a criminal proceeding, whereas 21 *Del.C.* ch. 28 has consistently been interpreted as civil in nature).