# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,       )
)
)
        v.            )       I.D. No. 2009013317
)
MARK SPEICHER,       )
)
    Defendant.       )

Submitted: May 11, 2022
Decided: June 29, 2022

*Upon Consideration of Defendant's Motion to Suppress*,
**DENIED**.

## MEMORANDUM OPINION

Isaac A. Rank, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, Wilmington, Delaware. *Attorney for the State of Delaware*.

Joseph A. Hurley, Esquire, JOE HURLEY, P.A., Wilmington, Delaware. *Attorney for Defendant Mark Speicher*.

**BUTLER, R.J.**

Defendant Mark Speicher has been indicted on a charge of driving under the influence of alcohol ("DUI"). He has moved to suppress evidence of his blood-alcohol content ("BAC"), arguing his arrest and resulting intoxilyzer test were without probable cause. The Court finds that there was probable cause to believe Speicher committed DUI. Accordingly, his motion is denied.

## BACKGROUND[1]

### A. The Arrest

On September 26, 2020, Speicher was driving southbound near Port Penn. Delaware State Police radar clocked his car traveling at 68 mph in a 50-mph zone. Upon the trooper's signals, Speicher stopped on the paved lot of a local fire station. Speicher was asked to produce his driver's license but said he did not have it with him. Things went downhill from there, most of it recorded on the officer's microphone and MVR, which was admitted into evidence.

The trooper observed that Speicher's breath smelled of alcohol. His speech was slurred. And his eyes were dilated, glassy, and bloodshot. Speicher candidly admitted that he had been drinking earlier at the Crooked Hammock Brewery.

---

[1] The Court has drawn its factual background from the facts proven during Speicher's suppression hearing.

Various field sobriety tests ("FST") followed. The trooper first asked Speicher to recite the alphabet sequentially. Speicher made it to the letter G and then announced that he had to use the bathroom.

The trooper escorted Speicher to and from a restroom in the fire station. Next, he administered a counting test. This FST required Speicher to count backwards from numbers 88 to 69. But Speicher repeated some numbers, counted some out of order, and ultimately counted beyond the boundaries the trooper imposed.

Speicher next attempted finger-to-nose tests ("FTN"). These FST required Speicher to use designated fingers to touch the tip of his nose. Speicher completed these tasks, but too poorly for the results to be considered successful.

Speicher was next asked to undertake walk-and-turn ("WAT"), one-leg-stand ("OLS"), preliminary-breath ("PBT"), and eye-movement ("HGN") FST. But Speicher explained that he had physical limitations that prevented him from complying fully. In addition, the PBT was administered 13 minutes (instead of the recommended 15 minute minimum) after the stop. The State concedes that these FST should not be included in the probable cause calculus.

In any event, Speicher was arrested for DUI. At the police station, Speicher took an intoxilyzer test that registered his BAC above the statutory limit.

## B. This Motion

Speicher has moved to suppress the intoxilyzer test results. He says the alphabet, counting, and finger-based FST have not been "validated" by the National Highway Traffic Safety Administration ("NHTSA"), which promulgates the guidelines police use to investigate DUI offenses. Without these FST, Speicher argues, the trooper lacked probable cause to arrest him, rendering his intoxilyzer test the fruit of an illegal seizure. In opposition, the State disputes Speicher's characterization of the FST classifications and argues that, even without any non-validated FST, probable cause supported Speicher's arrest.

The parties conducted a hearing on Speicher's motion, after which they filed supplemental briefing. The motion is now ripe for decision.

## STANDARD OF REVIEW

A breath test is a search and an arrest is a seizure.[2] So both are "subject to Fourth Amendment requirements and procedures."[3] Under the Fourth Amendment, searches and seizures generally must be supported by probable cause.[4] Probable cause exists when police officers "possess information [that] would warrant a reasonable [officer] in believing a crime has been committed."[5] Accordingly, an

---

[2] *Schmerber v. California*, 384 U.S. 757, 767 (1966).
[3] *Bease v. State*, 884 A.2d 495, 498 n.4 (Del. 2005).
[4] *E.g.*, *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000).
[5] *Garner v. State*, 314 A.2d 908, 910 (Del. 1973).

officer cannot arrest a person and then test his breath unless the officer "has probable cause to believe that the person was driving while under the influence of alcohol[.]"[6]

"Probable cause is an elusive concept [that] avoids precise definition."[7]  As a result, "probable cause is . . . measured, not by precise standards, but rather by the totality of the circumstances[.]"[8]  "In order to establish probable cause" for a DUI arrest, "the arresting officer must articulate facts considered in the totality of the circumstances that suggest there is a fair probability that the driver is under the influence."[9]  In other words, "the arresting officer [must] possess a quantum of trustworthy information sufficient to warrant" a belief that "a DUI offense has been committed."[10]  The State bears the burden to prove that the arresting officer had probable cause to arrest the defendant before the officer chemically tested him.[11]

"A finding of probable cause does not require the police to uncover information sufficient to prove a suspect's guilt beyond a reasonable doubt or even to prove that guilt is more likely than not."[12]  Nor must an officer "rule out potentially innocent, alternative explanations for a driver's conduct."[13]  Instead, probable cause

---

[6] *Bease*, 884 A.2d at 498.  *See* 11 *Del. C.* § 2740 (1995) (implied consent statute).
[7] *State v. Cochran*, 372 A.2d 193, 195 (Del. 1977).
[8] *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993).
[9] *Rybicki v. State*, 119 A.3d 663, 670 (Del. 2015).
[10] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011) (internal quotation marks omitted).
[11] *E.g.*, *Bease*, 884 A.2d at 498.
[12] *Maulo v. State*, 2011 WL 3849498, at *2 (Del. Aug. 30, 2011) (internal quotation marks omitted).
[13] *Rybicki*, 119 A.3d at 671.

exists when "the totality of the circumstances presented reveals that based upon their observations, their training, their experience, their investigation, and rational inferences drawn therefrom, the police possessed a quantum of trustworthy factual information sufficient . . . to conclude" the defendant was driving under the influence of alcohol.[14]  "In essence, probable cause is a common-sense determination . . . ."[15]

### ANALYSIS

Speicher contends that the trooper lacked probable cause to arrest him because he performed well on some FST and the ones he failed have not been researched by NHTSA as thoroughly as others.  But this position is at odds with controlling precedent that authorizes an arrest if some, but not all the FST, are either administered or successfully completed.  It also overlooks the probable cause that existed regardless of any FST.  FST may be sufficient to support probable cause, but FST are not necessary if other circumstances independently support an arrest.

**A.  The trooper had probable cause to believe Speicher committed DUI.**

Title 21, Section 4177, Delaware's DUI statute, combats "the inherent dangers lurking when one consumes alcohol and then proceeds to drive a vehicle."[16]

---

[14] *Maxwell*, 624 A.2d at 929 (emphasis and internal quotation marks omitted).

[15] *Edwards v. State*, 320 A.2d 701, 703 (Del. 1974).

[16] *DiSabatino v. State*, 808 A.2d 1216, 1228 (Del. 2002).  *E.g.*, *Daniels v. State*, 246 A.3d 557, 562 (Del. 2021) (identifying "punishment of those who drive . . . while under the influence of alcohol" as Section 4177's "evident purpose" (internal quotation marks and citation omitted)); *State v. Baker*, 720 A.2d 1139, 1144 (Del. 1998) (identifying "the problems associated with impaired drivers" as the "evil" to

6

Balancing the rights of lawful drivers to be left alone against the dangers wrought by DUI is the job of probable cause.

Probable cause for a DUI arrest may be supported by a variety of factors, including: "commission of a traffic offense, odor of alcohol, . . . rapid speech, . . . admitted alcohol consumption, dazed appearance[,]"[17] "confusion as to whereabouts, failing a counting test, bloodshot and glassy eyes, irregular speech, and failing other validly performed [FST]."[18] Although any one of these factors "considered in isolation, may be insufficient to establish probable cause[,]" they may combine to establish probable cause in the totality of the circumstances.[19]

In this case, the trooper rather quickly learned that Speicher (1) violated two traffic laws—speeding and driving without a license; (2) exuded an odor of alcohol; (3) had been drinking; (4) failed at least three FST—the alphabet, counting, and finger-based tests; (5) had bloodshot and glassy eyes; and (6) spoke with a slur. The

---

which Section 4177 "clearly" is "addressed" (internal quotation marks omitted)). *See generally* 21 *Del. C.* § 4177(a) (2021) (proscribing various types of DUI).

[17] *Miller v. State*, 4 A.3d 371, 375 (Del. 2010) (citations omitted).

[18] *State v. Iubatti*, 2017 WL 3396493, at *2 (Del. Super. Ct. Aug. 7, 2017) (citations omitted). *See generally* 21 *Del. C.* § 4177(c)(11) (defining "while under the influence" using indicia that would suggest to an onlooker that the driver is "less able" to drive than "ordinarily" "because of the influence of alcohol").

[19] *Maxwell*, 624 A.2d at 931. *Cf. Lefebvre*, 19 A.3d at 293 ("[A] traffic violation combined with the odor of alcohol, standing alone, do not constitute probable cause to arrest the driver for a DUI offense.").

upshot is that Speicher exhibited many indicia of DUI. Accordingly, the trooper lawfully arrested him and then lawfully tested his breath.

## B. Speicher's contrary arguments are unavailing.

In opposition, Speicher dismisses the alphabet, counting, and FTN tests as "unscientific." To support this argument, Speicher draws on the NHTSA guidelines that are used to train police departments in their investigations of DUI cases.[20] But the "science" of FST is no help to Speicher. And he ignores some important caveats.

### 1. FST may support probable cause even if not specifically "validated" by NHTSA.

It is true that NHTSA commissioned several studies of various FST to determine their accuracy in measuring BAC. Specifically, researchers studied the following tests: (i) OLS; (ii) FTN; (iii) "Finger Count;" (iv) WAT; (v) "Tracing" (a paper and pencil exercise); and (vi) HGN. NHTSA did not study the alphabet or counting tests, or any of the other indicia of DUI present in this case. Still, although the scientific reliability of those other factors has not been studied by researchers, those factors have been looked to for probable cause in countless decisions in Delaware and across the country. Indeed, an inability to count by a licensed driver hardly needs scientific rigor to confirm the absence of one's full attention to detail.

---

[20] *See generally State v. Ruthardt*, 680 A.2d 349, 353 (Del. Super. Ct. 1996) (observing that Delaware state troopers use NHTSA guidelines in their training).

Of the tests studied, the OLS, WAT, and HGN tests are highly correlated with a BAC above the legal limit.[21]  Failures on these tests would weigh factor heavily in the probable cause determination.  But does a "pass" on these tests—or a failure to give them—mean probable cause is not present?  Neither logic nor our case law agrees with that proposition.

First, FST are not foolproof.  NTSHA's field validation study showed that failures on the HGN were 88% accurate at predicting a BAC above .08 (or 12% inaccurate).[22]  Failures on the OLS were 83% accurate at predicting a BAC above .08 (or 17% inaccurate)[23] and failures on the WAT were 79% accurate (or 21% inaccurate).[24]  The thought that 10-20% of legally intoxicated drivers should be returned behind the wheel because they passed the "scientific" FST is not good law or policy.

Second, not all drivers and not all conditions support "psychophysical" testing.[25]  Some cases—like this one—involve a suspect with physical limitations

---

[21] *Participant Manual: DWI Detection and Standardized Field Sobriety Testing (SFST)*, Nat'l Highway Traffic Safety Admin., https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/sfst_full_participant_manual_2018.pdf (last updated Feb. 2018) ("NHTSA Manual") (pdf. p. 293). *See, e.g., Lefebvre*, 19 A.3d at 294 n.22, 295 n.24.

[22] NHTSA Manual at 295, 303

[23] *Id.* at 268, 303.

[24] *Id.* at 263, 303.

[25] *Id.* at 22 (defining psychophysical tests as "methods of investigating the mental . . . and physical characteristics of a person suspected of" DUI).

that make resort to FST impractical or impossible.[26]  If probable cause may only be found after "validated" testing approved by NHTSA, what is to become of these suspects?  That is why probable cause is not susceptible to the statistical "validation" urged by Speicher here.

Delaware law "eschew[s] a hypertechnical approach" to finding probable cause "in favor of a common-sense" approach.[27]  Indeed, Delaware courts "assess[] the probabilities that flow[] from the evidence presented in support of" probable cause "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."[28]  Without question, a suspect's failure to pass a NHTSA-"validated" FST is strong evidence of probable cause.  But lacking such evidence does not vitiate probable cause that may be found elsewhere.  Tellingly, FST that deviate from NHTSA's guidelines have been excluded for lack of proper evidentiary foundation,[29] but never for lacking a certain percentage of "validity."[30]

---

[26] *Id.* at 275.
[27] *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989) (internal quotation marks omitted). *E.g.*, *Illinois v. Gates*, 462 U.S. 213, 231 (1983) ("In dealing with probable cause, . . . as the very name implies, we deal with probabilities.  These are not technical; they are the factual and practical considerations of everyday life . . . ." (first omission in original) (internal quotation marks omitted)).
[28] *Gardner*, 567 A.2d at 409 (internal quotation marks omitted).
[29] *See, e.g.*, *Zimmerman v. State*, 693 A.2d 311, 314–16 & n.15 (Del. 1997).  *But cf. Miller*, 4 A.3d at 374 (holding that probable cause existed independently of FST and even though officer failed to testify as to whether he followed NHTSA guidelines).
[30] *See State v. Dale*, 2016 WL 691445, at *3 (Del. Super. Ct. Feb. 11, 2016) ("[N]o Court in this jurisdiction has concluded that a failure to strictly comply with NHTSA invalidates the test." (alteration and internal quotation marks omitted)).

10

Here, each of the FST Speicher challenges has been reviewed unquestioningly by the Delaware Supreme Court.[31] Accordingly, there is no reason to discredit them. Moreover, Speicher does not identify any authority or workable probable cause standard requiring police officers to moonlight as statisticians. The Court will not be the first to adopt one.

### 2. The trooper had probable cause before he administered any FST.

Even assuming the "validation" argument has merit, the Court is convinced probable cause was present without the FST the parties agreed to discard. After all, the totality of the circumstances in existence before any FST were administered supplied probable cause for Speicher's arrest.

"There are many factual scenarios where probable cause to arrest for a DUI offense is so clear" that FST are unnecessary.[32] FST may create or bolster probable cause, but they are "of insufficient evidentiary weight to eliminate *probable cause* that had already been established by the totality of the circumstances *before* the performance of the [FST]."[33] Here, the trooper stopped Speicher for speeding and

---

[31] *See, e.g.*, *Maulo*, 2011 WL 3849498, at *2 (counting and finger-based tests); *Bease*, 884 A.2d at 498 (alphabet and counting tests); *Perrera v. State*, 2004 WL 1535815, at *1 (Del. June 25, 2004) (alphabet and counting tests).

[32] *Lefebvre*, 19 A.3d at 295. *See Bease*, 884 A.2d at 499 (explaining that a person "*may be required*" to perform FST if there is "probable cause to believe that the person was driving while under the influence of alcohol" (emphasis added)).

[33] *Lefebvre*, 19 A.3d at 295 (second emphasis added). *See also Perrera*, 2004 WL 1535815, at *1 (holding that "[m]ixed results in [FST] do not" affect probable cause where "other sufficient factors are present").

11

then learned that he was driving without a license. The trooper also observed that Speicher's breath smelled of alcohol, his eyes were bloodshot and glassy, and his speech was slurred. Speicher even admitted he had been drinking before he started driving. Taken together, these circumstances give probable cause to a DUI arrest. If the encounter ended here, Speicher would have been lawfully arrested.[34]

Regardless, the Court last notes that the trooper's decision to administer FST—even though he already had probable cause beforehand—was permissible. "[W]here (as here) a police officer has probable cause to arrest before any field testing, the officer is not precluded from developing additional evidence through field testing."[35] To reinforce the probable cause he developed beforehand, the trooper administered at least three (approved) FST and Speicher failed them all. Common sense therefore leads the Court to find that the totality of the circumstances surrounding Speicher's FST performance was further probative of DUI.

In sum, Speicher's FST arguments do not support suppression. The Court finds the trooper had probable cause to arrest Speicher for DUI. By consequence, the BAC test that followed his arrest is not fruit of an illegal seizure.

---

[34] *See, e.g.*, *Bease*, 884 A.2d at 499–500 (holding that commission of traffic offense, odor of alcohol, bloodshot and glassy eyes, rapid speech, and defendant's admission to drinking alcohol were sufficient to establish probable cause); *Maxwell*, 624 A.2d at 930–31(holding that alcoholic odor, admitted alcohol consumption, and defendant's dazed appearance constituted probable cause).
[35] *Lefebvre*, 19 A.3d at 295.

## CONCLUSION

Probable cause supported Speicher's arrest and subsequent intoxilyzer test.

Accordingly, his motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge

13